## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MEDIA MATTERS FOR AMERICA,

*Plaintiff*,

v.

FEDERAL TRADE COMMISSION, et al.;

*Defendants.*

Civil Case No. 25-1959

### SUPPLEMENTAL MEMORANDUM

Plaintiff Media Matters for America ("Media Matters") respectfully submits this memorandum in response to the Court's Order directing the parties to address whether *Block v. Community Nutrition Institute*, 467 U.S. 340 (1984), impacts the Federal Trade Commission's ("FTC's") jurisdictional arguments in this case.

*Block* concerned a statutory scheme plainly distinguishable from the one at issue here, and therefore does not undermine this Court's jurisdiction over Media Matters' First Amendment claim. *Block* concerned a statutory review scheme pertaining to market orders issued by the Secretary of Agriculture that set "the minimum prices that" dairy handlers had to pay dairy farmers for their milk products. *Block*, 467 U.S. at 341–42. In particular, Congress created "a mechanism by which *dairy handlers* could obtain review of the Secretary's market orders." *Id.* at 346 (emphasis added). Under that scheme, handlers that wished to challenge market orders had to "first . . . exhaust the administrative remedies made available by the Secretary," after which, if necessary, they could "obtain judicial review of the Secretary's ruling in the federal district court in any district in which [they are] inhabitant[s], or ha[ve their] principal place[s] of business." *Id.* That

statutory scheme—including the exhaustion requirement—did not reference any other party, such as dairy *consumers*.

Several parties—a dairy handler and three dairy consumers—brought suit to challenge several milk market orders. *See id.* at 344. The lower courts concluded that the handler had failed to exhaust his administrative remedies, and thus dismissed his claim. *See id.* at 344. That issue was not addressed by the Supreme Court on appeal. As for the dairy consumers, the Supreme Court concluded that Congress's decision to establish a specific statutory scheme by which handlers could challenge milk market orders in district court suggested that Congress intended to preclude other parties, such as dairy consumers, from challenging those orders. *See id.* at 349 ("[A]t least when a statute provides a detailed mechanism for judicial consideration of particular issues at the behest of particular persons, judicial review of those issues at the behest of other persons may be found to be impliedly precluded"). The Court explained that allowing dairy consumers to challenge milk market orders in district court could "severely disrupt" the "delicate administrative scheme," because handlers could evade the statute's exhaustion requirement given that a "handler may also be a consumer and, as such, could sue in that capacity." *Id.* at 348. The Court also noted that there was little need for allowing consumers to challenge milk market orders, because "[h]andlers have interests similar to those of consumers" and handlers could still challenge those orders. *Id.* at 352.

*Block* is not relevant to this case. Its conclusion as to handlers—that they must exhaust their administrative remedies before proceeding in district court—does not apply here because the Federal Trade Commission is not making an exhaustion argument; it is arguing that Media Matters can never initiate a district court action to challenge the FTC's Civil Investigative Demand

("CID").[1] *Block*'s conclusion concerning the dairy consumers does not apply here for at least three reasons.

First, *Block* merely held that, because the statutory scheme at issue expressly allowed for certain parties to assert, in district court, the *precise claims at issue*—substantive challenges to milk market orders—the Court could infer that Congress intended to disallow other parties from bringing those same claims in district court. *See supra* at 2; *Block*, 467 U.S. at 347 (finding it unlikely that "Congress unequivocally directed handlers first to" exhaust their administrative remedies while simultaneously allowing "*the same challenge*, if advanced by consumers" to proceed in district court without "initial administrative scrutiny" (emphasis added)); *Sackett v. E.P.A.*, 566 U.S. 120, 129–30 (2012) (interpreting *Block* to mean that "[w]here a statute provides that particular agency action is reviewable at the instance of one party . . . the inference that it is not reviewable at the instance of other parties, who are not subject to the administrative process, is strong"). Here, the FTC points to no statutory scheme that allows any party to bring, in district court, the claim Media Matters asserts: a First Amendment challenge to an investigative CID. The FTC's principal administrative review scheme does not even apply to CIDs, *see* PI Reply at 4–5, and, although there is a provision allowing for the *FTC* to file an action to *enforce* the CID, there is no comparable provision allowing a party to file an action to *challenge* a CID (for any reason). Thus, there is no statutory scheme here which, under *Block*, could allow the Court to infer that Congress sought to preclude Media Matters' First Amendment claim.

Second, permitting Media Matters to proceed with its First Amendment claim does not upset the statutory scheme. Again, in *Block*, the Supreme Court was concerned that permitting

---

[1] Note that Media Matters did pursue an administrative remedy for the FTC's Civil Investigative Remedy—it filed a petition to quash. *See* ECF No. 22-5. The FTC denied that petition in full and the FTC's decision is not appealable to a federal court. PI Opp. at 8–9.

district court actions by dairy consumers would allow handlers to evade the applicable exhaustion requirement. *See supra* at 2. Here, by contrast, allowing Media Matters to proceed with its suit would not relieve any other party of any procedural obligations imposed by the FTC Act.

Third, the statutory scheme provides no avenue for any other party with "interests similar to those of [Media Matters]" to challenge the relevant CID. *Block*, 467 U.S. at 352. In *Block*, the Court noted that, even if dairy consumers could not challenge milk market orders, the handlers could do so, and they would "be expected to challenge unlawful agency action." *Id.* Here, however, the relevant statute creates no mechanism by which any party with interests similar to those of Media Matters could bring suit to challenge the relevant CID on First Amendment grounds. Thus, preventing Media Matters from proceeding with its claim here could effectively insulate the FTC's CID from judicial scrutiny.[2] Congress could not have intended such a result.[3]

---

[2] As noted in Plaintiff's Reply, the FTC could decide to abstain from pursuing an enforcement action, and simply allow the CID to cast a pall over Media Matters. *See* PI Reply at 5. Meanwhile, Media Matters would continue to suffer injuries due to the CID's very existence. *See* PI Reply at 17–19.

[3] During oral argument, the district court referred to *Hoffman Group, Inc. v. E.P.A.*, in which the Seventh Circuit cited *Block* and concluded that a statutory provision allowing the EPA to bring suit to enforce an administrative compliance order precluded the recipient of that order from initiating its own suit to challenge the order. 902 F.2d 567, 569 (7th Cir. 1990). The Supreme Court, however, has since concluded that, under *Block*, the EPA's statutory right to "bring a civil action" to enforce compliance orders does *not* preclude "judicial review of" a "compliance order." *Sackett*, 566 U.S. at 128. Notably, the Court found it problematic that the plaintiffs there—like Media Matters here—could not "initiate th[e] [statutory enforcement] process, and each day they wait for the Agency to drop the hammer, they" suffer additional harms. *Id.* at 127. Additionally, *Hoffman* is unpersuasive on its own terms. The opinion contained no meaningful discussion of *Block*, or the factors addressed therein. *See id.* Instead, it merely cited to *Block* and noted: "Having provided a detailed mechanism for judicial consideration of a compliance order via an enforcement proceeding, Congress has impliedly precluded judicial review of a compliance order except in an enforcement proceeding." *Hoffman*, 902 F.2d at 569. Of course, neither the Supreme Court nor the D.C. Circuit has ever read *Block* to mean that if a statutory scheme generally relates to some subject matter, no claims relating to that subject matter may be brought outside of the statutory scheme. To the contrary, the Supreme Court has made clear that *Block* applies only when a particular scheme allows some party to bring the *precise claims at issue*. *See supra* at 3. Further, *Block* relied on a number of other factors, *see supra* at 2, and Hoffman did not even address them.

Accordingly, *Block* does not support the FTC's jurisdictional arguments. The Court has jurisdiction to hear this case and enter Media Matters' requested preliminary injunction.

Dated: August 14, 2025                                        Respectfully submitted,

                                                        /s/ Stephen P. Anthony

                                              Stephen P. Anthony (D.C. Bar No. 426536)
Ryan K. Quillian (D.C. Bar No. 994846)***
Dana A. Remus (D.C. Bar No. 90015315)*
Kuntal V. Cholera (D.C. Bar No. 1031523)***
Brenden J. Cline (D.C. Bar No. 1021317)*
Brigid P. Larkin (D.C. Bar No. 1780668)*

Sarah Leadem**
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
(202) 662-6000

Justin A. Nelson (D.C. Bar No. 490347)
Matthew Behncke**
Alexandra Foulkes Grafton***
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002-5096
(713) 651-9366

Katherine M. Peaslee***
SUSMAN GODFREY L.L.P.
401 Union Street, Suite #3000
Seattle, WA 98101
(206) 516-3880

*Admission pending
** *Pro hac vice* application forthcoming
*** Admitted *pro hac vice*