IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MEDIA MATTERS FOR AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>FEDERAL TRADE COMMISSION, et al.,<br><br>*Defendants*. | Civil Action No. 25-1959 (SLS) |

## DEFENDANTS' MOTION FOR STAY PENDING APPEAL
## AND ADMINISTRATIVE STAY

Defendants Federal Trade Commission (FTC), *et al.*, hereby move this Court to stay the August 15, 2025, preliminary injunction (ECF_35) pending appeal, and also move for an immediate administrative stay of the injunction to allow this Court and the D.C. Circuit to consider a stay pending appeal. Defendants respectfully request a decision on this motion no later than close of business on Wednesday, August 20, 2025, to allow them to consider seeking a stay promptly from the D.C. Circuit. Plaintiff opposes this motion.

## BACKGROUND

The FTC is investigating whether online advertisers or advertising agencies unlawfully agreed to coordinate the placement of ads using certain lists that categorize or rate content publishers as not "brand suitable" or not "brand safe," thereby diminishing the quantity of ads on certain news outlets, publishers, or platforms. *See* Order Denying Petition to Quash Civil Investigative Demand, *In the Matter of Civil Investigative Demand to Media Matters for America Dated May 20, 2025*, FTC Dkt. No. 251-0061 (July 25, 2025), at 2. Such coordination, if it occurred, would likely violate Section 1 of the Sherman Act and Section 5 of the FTC Act. FTC Chairman Andrew N. Ferguson has made clear for several years that he considers this a

serious concern under the antitrust laws, and the Commission as a whole has reaffirmed the importance of investigating potentially illegal collusion among advertisers. Seventeen still-outstanding Civil Investigative Demands (CIDs) have been issued to entities that the FTC has reason to believe may have information relevant to the ongoing investigation, including advertising trade associations, brand safety/suitability rating organizations, and policy/advocacy groups such as Media Matters. And CIDs can be issued even to entities that are outside the FTC's substantive enforcement jurisdiction.

On August 15, 2025, this Court issued a preliminary injunction prohibiting the defendants "from implementing or enforcing the Civil Investigative Demand served by the Federal Trade Commission to Media Matters on May 20, 2025, and modified on July 7, 2025." ECF_35. That preliminary injunction impedes the FTC's ongoing investigation by preventing it from determining whether Media Matters has any responsive information relevant to the investigation into advertiser boycotts that would violate the antitrust laws. The Court concluded that plaintiff had shown a likelihood of success on the merits of its claim that the CID was issued in retaliation for protected speech by plaintiff, and that plaintiff had demonstrated irreparable injury. The Court also relied on the public interest in free speech and a determination that the government would not be harmed by enjoining conduct the Court deemed unconstitutional. ECF_34.

## ARGUMENT

A stay pending appeal must be based on the Court's assessment of four factors: (1) the applicant's likelihood of success on the merits; (2) whether the applicant faces irreparable injury absent a stay; (3) whether a stay will substantially injure the other parties; and (4) the public interest. *Nken v. Holder*, 556 U.S. 418, 434 (2009).

The preliminary injunction irreparably harms defendants and the public interest by hindering the FTC's ongoing investigation into potential antitrust violations. The harm to the

public interest here is particularly acute because the potential antitrust violations themselves may be causing harm to news outlets and platforms based on the content of their speech or the speech they publish. Congress has empowered the FTC to conduct such investigations, and has specifically granted the FTC authority to issue a CID to any person the Commission has reason to believe may have information relevant to antitrust violations. *See* 15 U.S.C. § 57b-1(c)(1). The injunction in this case prevents the FTC from carrying out its statutory mission and seeking relevant and responsive information—or determining that plaintiff has no such information. The Court should grant a stay pending appeal—or, in the alternative, a brief administrative stay—to allow the D.C. Circuit to consider these important questions before the FTC's investigative authority is impeded any further.

**1. Likelihood of success on the merits**

The Court's injunction is contrary to a long line of decisions from the Supreme Court and lower courts rejecting efforts to challenge CIDs or administrative subpoenas issued by the FTC or other federal law-enforcement agencies. *See, e.g.*, *FTC v. Claire Furnace Co.*, 274 U.S. 160 (1927); *Gen. Fin. Corp. v. FTC*, 700 F.2d 366 (7th Cir. 1983); *Bd. of Dental Exam'rs of Ala. v. FTC*, 519 F. Supp. 3d 1033 (N.D. Ala. 2021). Those decisions confirm that the appropriate forum for judicial review of challenges to the FTC's authority to issue a CID is an enforcement action brought by the FTC in district court. Neither the Court nor plaintiff has identified any other instance in which a court interfered in an active investigation by the FTC or any other federal agency granted similar investigative authority.

That long and uninterrupted line of cases confirms that plaintiff's pre-enforcement collateral challenge to the CID is not cognizable, whether viewed in terms of jurisdictional preclusion or the unavailability of a cause of action. The Court nevertheless concluded that this case should be treated differently, in light of plaintiff's claim that the issuance of the CID alone

caused a chilling effect on its journalistic activities as well as reputational and financial harm. But those types of harm are easy to assert and difficult to trace to the issuance of the FTC's CID, especially in light of plaintiff's own decision to publicize the existence of the CID. If those harms were sufficient to overcome the caselaw rejecting premature collateral challenges to FTC CIDs, any recipient of a CID could prevail in a case such as this, effectively preventing the FTC (and other federal law enforcement agencies) from undertaking investigations that a CID recipient characterizes as ideologically motivated.

Defendants recognize that this Court has considered and rejected those arguments. But the standard for a stay pending appeal does not require the Court to change its mind. *See, e.g., Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843, 844-45 (D.C. Cir. 1977) (district court may "grant a stay even though its own approach may be contrary to movant's view of the merits"; "tribunals may properly stay their own orders when they have ruled on an admittedly difficult legal question and when the equities of the case suggest that the status quo should be maintained"), *quoted in FTC v. Weyerhauser Co.*, 665 F.2d 1072, 1077-78 (D.C. Cir. 1981); *Mahoney v. U.S. Cap. Police Bd.*, No. 21-2314 (JEB), 2024 WL 4502225, at *2 (D.D.C. Oct. 16, 2024) ("While the Court remains convinced that its previous Opinions correctly resolved the issues, Defendants need not persuade it that it erred and will likely be reversed—an acknowledgment one would expect few courts to make.").

### 2. Balance of equities and the public interest

The equitable factors likewise weigh in defendants' favor, and the public interest merges with the harm to defendants where, as here, defendants seek a stay of an injunction against the government. The Court's injunction prevents the FTC from taking even the most basic investigative steps. Indeed, the injunction appears to prevent even the ordinary meet-and-confer process that would precede a CID enforcement action in district court.

Congress has granted broad investigative powers to the FTC, confirming the public interest in the agency's authority to investigate and seek to remedy antitrust violations. *Cf. Maryland v. King*, 567 U.S. 1301, 1303 (2012) ("any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury") (citation omitted); *Okla. Press Publ'g Co. v. Walling*, 327 U.S. 186, 218 (1946) ("the public interest under the declared policy of Congress also would be affected if petitioners should enjoy the practically complete immunity they seek"). To the extent that Media Matters possesses relevant, responsive information about other CID recipients, or other as-yet unidentified organizations that may be relevant to the investigation, the injunction harms the FTC by impeding its ability to investigate these other entities as well. *See FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 242 (1980) (judicial review of the Commission's reasons for a non-final action "would delay resolution of the ultimate question whether the Act was violated"). And the injunction in this case will almost certainly embolden other CID recipients—not limited to the investigation into advertiser boycotts—to bring collateral challenges to the investigative authority of the FTC and other law enforcement agencies.

On the other hand, Media Matters suffers no cognizable harm merely from the issuance of the CID in the course of this investigation into advertiser boycotts. The Supreme Court emphasized this point nearly a century ago. *Claire Furnace*, 274 U.S. at 174 ("Until the Attorney General acts [to bring an enforcement action], the defendants cannot suffer, and, when he does act, they can promptly answer and have full opportunity to contest the legality of any prejudicial proceeding against them."). Moreover, Media Matters chose to publicize the CID, and the asserted injuries it now relies on—reputational and financial harm, and exclusion from communications with other organizations—cannot be attributed to the FTC's nonpublic issuance of the CID. And those asserted harms are no different than any CID recipient's concerns about how an ongoing FTC investigation might affect its communications and operations. The Supreme Court has emphasized

that even the claimed "inconvenience, expense and harassment" of responding to a subpoena enforcement action is not cognizable: "There is no harassment when the subpoena is issued and enforced according to law." *Okla. Press*, 327 U.S. at 217.

## CONCLUSION

For the foregoing reasons, the Court should enter a stay pending appeal. To the extent this Court is inclined to deny a stay pending appeal, it should enter an administrative stay of at least one week to afford defendants the opportunity to seek a stay in the D.C. Circuit, and to give that court an opportunity to evaluate that request.

Dated: August 18, 2025
      Washington, D.C.

                             Respectfully submitted,

OF COUNSEL:                   LUCAS CROSLOW (D.C. Bar #1048342)
                             *General Counsel*

DANIEL GUARNERA
*Director*                       ALEX POTAPOV (D.C. Bar #998355)
                             *Deputy General Counsel*

KELSE MOEN
*Deputy Director*

                       /s/ H. Thomas Byron III
GEOFFREY GREEN             H. THOMAS BYRON III (D.C. Bar #442856)
*Assistant Director*            *Deputy General Counsel*
                             IMAD D. ABYAD (D.C. Bar #456392)
BUREAU OF COMPETITION      *Attorney*

                       FEDERAL TRADE COMMISSION
                       600 Pennsylvania Ave., N.W.
                       Washington, DC 20580
                       (202) 326-2527
                       hbyron@ftc.gov

                       *Attorneys for the Defendants*