IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MEDIA MATTERS FOR AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>FEDERAL TRADE COMMISSION, et al.,<br><br>*Defendants*. | Civil Case No. 25-1959 |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR STAY PENDING APPEAL AND ADMINISTRATIVE STAY**

Without confronting any of the legal or factual reasoning in this Court's opinion granting Media Matters' request for a preliminary injunction, Defendants now ask this Court for the "extraordinary remedy" of a stay pending appeal. *KalshiEX LLC v. Commodity Futures Trading Comm'n*, 119 F.4th 58, 63 (D.C. Cir. 2024) (cleaned up). Though Defendants correctly acknowledge their heavy burden to (a) show irreparable harm, (b) make a "strong showing" of likely success on the merits, and (c) establish that the public interest and harm to other parties both weigh in their favor, *id.*, they fail to meet that burden at every step. The Court thus should deny Defendants' attempt to achieve by a stay what they could not achieve on the merits.

***Irreparable Harm.*** Defendants make only a passing reference to the "critical" requirement that they will suffer irreparable harm if the preliminary injunction remains in place pending appeal. *See Citizens for Resp. & Ethics in Wash. v. Fed. Election Comm'n*, 904 F.3d 1014, 1019 (D.C. Cir. 2018) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). An irreparable harm is one that is "actual and not theoretical," and must be "both certain and great." *Id.* (citations omitted).

Nothing in Defendants' motion suggests that their alleged "injury" is more than theoretical.

1

Without providing any factual support, Defendants assert that the preliminary injunction "hinder[s] the FTC's ongoing investigation" into "online advertisers or advertising agencies." Defs.' Mot. Stay Pending Appeal ("Stay Mot.") at 1–2, ECF No. 37. Offering only this conclusory statement, Defendants fail to explain *how* the preliminary injunction would cause irreparable harm. Even assuming Media Matters had any information relevant to the FTC's investigation, the preliminary injunction could hinder that investigation only if the FTC planned to enforce the civil investigative demand ("CID") imminently. But not only has the FTC failed to make such a claim, it has failed to assert that it plans to enforce the CID *ever*, couching its plans in tentative language. *E.g.*, Opp'n Pls.' Mot. Prelim. Inj. ("Opp'n") at 15, ECF 27 ("should the Commission decide to enforce the CID"). And should Defendants suddenly assert a desire to enforce the CID, a delay in their ability to do so against Media Matters—one of seventeen organizations to which the FTC issued similar CIDs (*id.* at 1)—would not meaningfully hinder the FTC's broader investigation.

Defendants further prove the theoretical nature of their injury when they suggest that it could be lessened by an administrative stay lasting "at least one week." Stay Mot. at 6. As noted on the record at oral argument, the FTC had already agreed to extend the CID's return date "to 30 days after the district court issues a dispositive order on Media Matters' motion for a preliminary injunction." Exhibit A to Anthony Decl., FTC Extension Letter. In other words, the FTC has already acquiesced to a suspension of CID enforcement until at least September 15. Defendants cannot now credibly claim an injury warranting an emergency stay to reinstate the CID during a time period in which they had already agreed they would not enforce it. Beyond establishing that Defendants can claim no injury until at least that date, such "unhurried litigation tactics counsel against a finding of irreparable harm." *Hanson v. District of Columbia*, 120 F.4th 223, 246 (D.C. Cir. 2024) (per curiam).

Nor do Defendants make any effort to show that harm to the FTC's investigation would be "both certain and great." *Citizens for Resp. & Ethics in Wash.*, 904 F.3d at 1019 (quoting *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)). Defendants' submissions support the opposite conclusion, averring that "the CID that [Media Matters] received from the FTC is one of *seventeen* outstanding CIDs from a broad investigation." Opp'n at 1. Defendants do not "offer any briefing or argument" to show that the Media Matters CID would uncover evidence of third-party wrongdoing that the FTC cannot obtain otherwise, including via the sixteen remaining CIDs. *Citizens for Resp. & Ethics in Wash.*, 904 F.3d at 1019. And Defendants do not contend that any delay in obtaining information from Media Matters during appellate review would meaningfully impede the investigation. Accordingly, "the irreparable injuries asserted fail to rise beyond the speculative level." *Id.* On this basis alone, the Court should deny the motion. *See Nken*, 556 U.S. at 434–35 ("[S]imply showing some possibility of irreparable injury fails to satisfy the [irreparable harm] factor"); *KalshiEX LLC*, 119 F.4th at 64 ("[A] showing of irreparable harm is a necessary prerequisite for a stay.").

**Likelihood of Success on the Merits.** Defendants further fail to show "more than a mere possibility of relief." *Nken*, 556 U.S. at 434 (cleaned up). Contrary to Defendants' assertion, the Court's preliminary injunction does not contravene a "long and uninterrupted line of cases confirm[ing] that [P]laintiff's pre-enforcement collateral challenge to the CID is not cognizable." Stay Mot. at 3. The cases they rely on—*Claire Furnace Company*, *General Finance Corporation*, and *Board of Dental Examiners*—each dealt with challenges to the form and scope of an FTC CID. There, the plaintiffs would suffer injuries only if the CID were enforced. Here, by contrast, the existence of this retaliatory CID itself is causing harm to Media Matters here and now. *See Media Matters for Am. v. Paxton*, 138 F.4th 563, 580 (D.C. Cir. 2025) ("'[A]ll investigative techniques

3

are subject to abuse and can conceivably be used to oppress citizens and groups,' and bad faith use of investigative techniques can abridge journalists' First Amendment rights.") (quoting *Reps. Comm. for Freedom of the Press v. AT&T*, 59 F.2d 1030, 1064 (D.C. Cir. 1978)). This Court explained exactly this distinction when ordering the preliminary injunction in the first place. Mem. Op. Pls.' Mot. Prelim. Injunction ("PI Mem. Op.") at 30–31, ECF No. 34 ("[T]he D.C. Circuit's distinction as to *Reisman* applies with equal force to *Claire Furnace Company*, rendering the FTC Act's enforcement provision an inadequate remedy at law" for CIDs issued in retaliation for protected speech).

Defendants are mistaken in attempting to relitigate the preliminary injunction motion by arguing that the Court's holding will "effectively prevent the FTC . . . from undertaking investigations that a CID recipient characterizes as ideologically motivated." Stay Mot. at 4. First, a plaintiff can obtain a preliminary injunction only after it has met "the burden of producing credible evidence sufficient to demonstrate his entitlement to injunctive relief." *Cal. Ass'n of Private Postsecondary Sch. v. DeVos*, 344 F. Supp. 3d 158, 167 (D.D.C. 2018) (cleaned up). Media Matters did exactly that by, for example, offering extensive evidence of retaliatory intent, including statements by Chairman Ferguson, his allies, and people who were put in FTC leadership positions after he became Chairman, criticizing and threatening adverse action against Media Matters and similar organizations. The evidence of retaliatory motive, as this Court correctly recognized, distinguishes Media Matters from an entity that is merely seeking to avoid the ordinary burdens of a lawful investigation. PI Mem. Op. at 39–46. Had there been any weakness in Media Matters' showing of retaliatory intent, Defendants could have challenged that showing by offering contrary evidence. *See Davis v. Billington*, 76 F. Supp. 3d 59, 64 (D.D.C. 2014) ("factual disputes" preclude a finding of likelihood of success on the merits). But they chose to offer none.

4

Defendants' motion should therefore be denied because they have not come close to showing that what the Court correctly recognized as a "straightforward First Amendment violation" (PI Mem. Op. at 1) was instead an "admittedly difficult legal question." *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977).

**Balance of Equities and Public Interest**. Finally, this Court must weigh the balance of equities, along with the public interest. *Grundmann v. Trump*, No. CV 25-425 (SLS), 2025 WL 1671173, at *2 (D.D.C. June 13, 2025) (these two factors "merge when the Government is the opposing party") (cleaned up). Defendants' argument that this balance tips in their favor likewise falls short. The law and the facts in the record show that Media Matters is already experiencing irreparable First Amendment harm from this retaliatory investigation. *See* PI Mem. Op. at 46–47 (holding that Defendants have conceded Media Matters' First Amendment injury is irreparable); *see also Media Matters for Am. v. Paxton*, 138 F.4th 563, 585 (D.C. Cir. 2025) (citation omitted) ("The loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury."). That leaves Defendants with only the argument that Media Matters has brought any First Amendment injury on itself. It is nonsensical for Defendants to suggest that a news organization would not suffer any injury if it would only agree to suffer First Amendment retaliation in silence by concealing from its sources and partners that it faced compelled disclosure of its communications with them. On the other side of the ledger, Defendants have failed to offer any reason why Media Matters, a nonprofit media organization, would have information relevant to an investigation of so-called advertiser "boycotts"—let alone any unique or superior information to the sixteen other organizations from which the FTC is seeking information.

## CONCLUSION

For the reasons above, the Court reject Defendants' motion for stay pending appeal.

| | |
|---|---|
| Dated: August 20, 2025 | Respectfully submitted,<br><br>/s/ Stephen P. Anthony<br><br>Stephen P. Anthony (D.C. Bar No. 426536)<br>Ryan K. Quillian (D.C. Bar No. 994846)<br>Dana A. Remus (D.C. Bar No. 90015315)*<br>Kuntal V. Cholera (D.C. Bar No. 1031523)**<br>Brenden J. Cline (D.C. Bar No. 1021317)<br>Brigid P. Larkin (D.C. Bar No. 1780668)*<br>Sarah Leadem***<br>COVINGTON & BURLING LLP<br>One CityCenter<br>850 Tenth Street, NW<br>Washington, DC 20001-4956<br>(202) 662-6000<br><br>Justin A. Nelson (D.C. Bar No. 490347)<br>Matthew Behncke***<br>Alexandra Foulkes Grafton**<br>SUSMAN GODFREY L.L.P.<br>1000 Louisiana Street, Suite 5100<br>Houston, TX 77002-5096<br>(713) 651-9366<br><br>Katherine M. Peaslee**<br>SUSMAN GODFREY L.L.P.<br>401 Union Street, Suite #3000<br>Seattle, WA 98101<br>(206) 516-3880<br><br>* Admission pending<br>** Admitted *pro hac vice*<br>*** *Pro hac vice* application forthcoming<br><br>*Counsel for Plaintiff Media Matters for America* |